**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**STEPHEN MILLER**                                          **PLAINTIFF**

**VS.**                         **CIVIL ACTION NO.:  1:24-CV-51-SA-DAS**

**TRONOX LLC; and
JOHN AND JANE DOES 1-10**                               **DEFENDANTS**

---

**MEMORANDUM IN SUPPORT OF DEFENDANT TRONOX LLC'S
MOTION FOR SUMMARY JUDGMENT**

---

This slip and fall action arises out of an accident that occurred on February 14, 2022, at the Tronox LLC ("Tronox") titanium dioxide manufacturing facility in Hamilton, Mississippi (the "Hamilton Facility").[1]  At the time of the accident, Plaintiff Stephen Miller ("Miller") worked as a welder and pipefitter for Lavender, Inc. ("Lavender"), a general and mechanical contractor which performs work for Tronox on various projects at the Hamilton Facility on a regular basis.  Miller's accident occurred shortly after 7:30 a.m. while he walked alongside a Tronox employee to the jobsite in an outdoor area of the facility known as the slurry storage tank area.  Miller, his son, and other members of the Lavender welding/pipefitting crew had been working in the slurry storage tank area for at least a couple of days.  According to Miller, as he walked to the specific location where he would be working that day to view the scope of work, Miller slipped and fell on white powder that had become "pasty" and slick by the dewy and foggy conditions of the morning.  At the time, Miller wore a below-the-knew prosthesis on his left leg as a result of a motorcycle accident approximately ten years earlier.  When Miller

---

[1]  Titanium dioxide is a pigment commonly used in the paint and coatings industries.

slipped, his prosthesis bent backwards under him causing him to incur injuries to his left leg and left knee, including a broken femur.

Miller seeks to hold Tronox liable for his injuries as the premises owner and asserts four causes of action against Tronox: negligence, negligent supervision/training, negligent infliction of emotional distress, and respondeat superior based on Tronox being vicariously liable for the alleged negligence of unidentified Tronox employees. *See generally* Complaint, Doc. 2.

As demonstrated below, the undisputed facts and applicable statutory and case law support an award of summary judgment in favor of Tronox on all four of Miller's claims. No dispute exists regarding the legal relationship between Tronox and Lavender. Since 2016, Lavender has been a Tronox independent contractor as expressly provided in the Master Work Agreement between Tronox and Lavender. Accordingly, pursuant to Miss. Code Ann. § 11-1-66 and Mississippi common law, Tronox did not owe Miller a duty to warn him of the alleged dangerous condition—in this case, a slippery surface—because both he and Lavender knew or reasonably should have known of the condition prior to the slip and fall.

## I. STATEMENT OF UNDISPUTED FACTS

### A. Relationship Between Tronox and Plaintiff's Employer Lavender, Inc.

On January 19, 2016, Lavender and Tronox entered into a Master Work Agreement ("MWA") for "work, construction or services to be performed from time to time" by Lavender at the Hamilton Facility. Ex. 1, Tronox-Lavender MWA. The MWA provided that Lavender shall at its own expense "furnish everything necessary, proper and incidental for the Work, including all labor [and] supervision …." *Id.* ¶ 1. Additionally, the MWA established that in performing the work contemplated by the MWA, Lavender "shall act solely as an independent contractor … and nothing herein shall, under any circumstances, constitute [Lavender] or its employees the

agent or employee of [Tronox] ….." *Id.* ¶ 28. The MWA further required Lavender to take responsibility for the safety of its own employees while working at the Hamilton Facility:

> 29. SAFETY, HEALTH AND THE ENVIRONMENT. Contractor acknowledges that the facility contains risks that could constitute a dangerous condition if Company's safety requirements, rules and regulations are not followed. Contractor further acknowledges that contact with certain equipment, materials and chemicals at the Facility may result in injury, or in death. Contractor is responsible for conditions relating to its Work, and Contractor and its subcontractors and their employees and contract labor shall at all times comply with Company's Contractor Safety Requirements Rules and Regulations Handbook ("Company's Safety Requirements Handbook"), which is incorporated herein by reference. All materials, and equipment used by Contractor or its subcontractors in the activities and operations associated with the Work shall comply with Company's Safety Requirements Handbook. Contractor and its subcontractors and their employees and

*Id.* ¶ 29.

Since 2016, Tronox has hired Lavender for numerous projects, and Lavender employees have worked in all areas of the Hamilton Facility on a regular basis. Ex. 2, Declaration of Todd Goldman ¶ 4. Lavender has a safety representative on site on a daily basis who conducts inspections of the various work areas for potential safety hazards prior to its employees beginning the job. *Id.* ¶ 5. Furthermore, Lavender maintains its own safety office at the Hamilton Facility. *Id.* And as with other independent contractors who provide services at the Hamilton Facility, Lavender employees attend safety orientation training and Lavender safety representatives attend daily safety meetings conducted by Tronox. *Id.* ¶ 6. During the safety training and daily safety meetings, Tronox covers all of the potential safety hazards at the Hamilton Facility, including slip and fall hazards. *Id.* ¶ 7.

Todd Goldman ("Goldman") is the Safety Lead in Tronox's Safety Department where he has worked continuously since 1997. *Id.* ¶ 1. According to Goldman, slick surfaces are a constant hazard throughout the production area at the Hamilton Facility due to the manner in which titanium dioxide is produced. *Id.* ¶ 8. Titanium dioxide is produced in both a dry state and a wet state. *Id.* In a wet state, the product is commonly referred to as "slurry." *Id.* Due to the wet nature of slurry, slick surfaces are an even more prevalent hazard in the area where slurry is

04649517

3

produced and stored. *Id.* As a result, Tronox frequently warns Lavender and other contractors who come on-site about the hazards presented by slick surfaces in the production areas. *Id.*

Tronox has designated Goldman as a non-retained expert, and it is Goldman's opinion that Lavender clearly knew or should have known about the hazards presented by slick surfaces in the production area, particularly in the area where slurry is produced and stored, because of (1) the large volume of work Lavender performs at the Hamilton Facility on a frequent basis; (2) the fact that Lavender maintains a safety director at the Hamilton Facility who has a duty under the MWA and OSHA to be aware of hazards in the areas where Lavender assigns its employees to work; and (3) Lavender's safety director and its employees frequently attend Tronox safety meetings where the hazards presented by slick surfaces are discussed. *Id.* ¶ 9.

### B. Plaintiff's Slip and Fall Accident

Plaintiff Stephen Miller ("Miller") is a welder, pipefitter, and fabricator by trade. Ex. 3, S. Miller Dep. 17:11-12. He has worked as a welder for thirty-five years. *Id.* 34:2-4. In 2010, an automobile struck Miller while riding his motorcycle, and he sustained severe injuries to his left leg. *Id.* 85:4-11. Ultimately, Miller made the decision to amputate his left leg below the knee. *Id.* 85:21-25. Following the amputation, he wore a prosthesis below his left knee.

Prior to 2022, Miller worked for several companies, including work "on a lot of projects for Lavender" as an employee of the company. *Id.* 24:14-15, 24-25. In January 2022, Lavender hired Miller and his son Stephen to work on a welding and pipefitting project at the Hamilton Facility. *Id.* 26:4-15, 27:5-11.

Miller's first day at the Hamilton Facility was February 7, 2022. *Id.* 101:4-25. That day, he and his son Stephen met Lavender supervisor Eric Sellers at the plant gate, and Mr. Sellers escorted the Millers to the safety orientation building where they attended an approximate eight-

hour safety meeting conducted by a Tronox safety employee that included a discussion about slurry. *Id.* 97:4-20, 98:8-10, 100:8-17. Although Miller had not worked at the Hamilton Facility prior to 2022, he worked as a supervisor for a different employer at a pigment plant in Lake Charles, Louisiana, in 2007 or 2008. *Id.* 93:12-94:9. Thus, he was well familiar with the operations and processes of plants similar to the Tronox Hamilton Facility. *Id.* 94:19-24.

The next day, February 8, Miller began work on a project in a different area of the plant from the slurry storage tank area. *Id.* 101:23-102:6. On that Wednesday or Thursday (February 9 or 10), he moved to the slurry storage tank area where his accident occurred just a few days later. *Id.* 102:11-25. Accordingly, it is indisputable that Miller had been working in the slurry storage tank area and had become familiar with the conditions in the area for at least "a couple of days" before his fall. *Id.* 23:25.

Each day, prior to its employees beginning work at a job site such as Tronox, Lavender safety foremen complete a "Job Safety Analysis" form ("JSA"). *Id.* 104:7-105:25. According to Miller, the purpose of the JSA is "to look ahead for hazards, for seeing hazards, and maybe eliminate them prior to starting work." *Id.* 103:15-17. The JSA includes a section for Lavender employees to sign, and Miller testified that he signed a Lavender JSA every day. *Id.* 103:9-13.

The JSA for February 14, 2022 shows that Miller and his son signed the form, along with four other persons working on the Lavender crew. Ex. 4, Job Safety Analysis p. 2; Ex. 3, Miller Dep. 99:2-5. It further indicates that the Lavender foreman discussed "Slick Surfaces" as being one of the "Area Hazards." Ex. 4, Job Safety Analysis p. 1. And one of the "Steps of the Job" was to "look at all potential hazards and work safely." *Id.*

Miller denies that the signature on the February 14 JSA is his signature, or even his print, and that although he typically signed the JSA's on a daily basis, he did not sign the February 14

JSA because "the foreman wasn't even out there yet." Ex. 3, Miller Dep. 107:4-22. However, because Miller had been working in the slurry storage tank area for "at least a couple of days," it is indisputable that he would have signed a JSA for that same area on one of the other days prior to his fall on February 14.

Miller identified the Lavender safety foreman responsible for being at the job site as Eric Sellers, but according to Miller, when he got to the site, Mr. Sellers was in "Lavender's trailer in the Tron ox plant, in the field office." *Id.* 108:18-109:6. Miller and other persons on the Lavender crew arrived at the Tronox site around 7:30 a.m. and waited for Mr. Sellers for "30 to 45 minutes" and attempted to call him on the phone but he did not answer so the crew continued to wait. *Id.* at 106:15-17, 113:7-23. At some point, they decided they could not wait for Mr. Sellers any longer, and Miller began walking with Tronox employee Daniel Howell so that Mr. Howell could show Miller "the job scope for that day." *Id.* 113:24-114:16. As he and Mr. Howell were walking and conversing, Miller's right leg slipped and his left leg with the prosthesis "twisted sideways" and bent under him. *Id.* 116:13-117:5. According to Miller, the substance on which he slipped originally existed in a white "powder form," but when "the fog and dew fell on it, then it wasn't powder anymore, it was pasty." *Id.* 122:9-19.

Following the fall, Tronox Emergency Medical Service personnel attended to Miller and then transported him to Baptist Hospital in Columbus, Mississippi, where the emergency room doctor diagnosed Miller with a broken left femur.

## II.  SUMMARY JUDGMENT STANDARD

The plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish an element essential to that party's case. Moreover, "[w]here summary judgment evidence establishes that one of the

essential elements of the plaintiff's cause of action does not exist as a matter of law . . . all other contested issues of fact are rendered immaterial." *Topalian v. Ehrman*, 954 F. 2d 1125, 1138 (5th Cir. 1992).

### III.  ARGUMENT AND AUTHORITIES

**A.      The Court Should Grant Tronox Summary Judgment on Each of Plaintiff's Negligence Claims**.

        To establish a claim for negligence, negligent supervison/training, or negligent infliction of emotional distress, Miller must prove Tronox owed him a duty, Tronox breached that duty, and the breach proximately caused his injuries. *See Wilbanks v. Hickman*, 198 So. 3d. 393, 397 (¶ 10) (Miss. Ct. App. 2016) (discussing elements of negligence claim); *Stephens v. Miller,* 970 So. 2d 225, 227 (¶ 6) (Miss. Ct. App. 2007) (noting that to prove negligent supervision claim, "a plaintiff must establish by a preponderance of the evidence the existence of a duty of care, a breach of that duty, proximate causation, and compensable damages."); *Fouche v. Shapiro & Massey, L.L.P.,* 575 F.Supp.2d 776, 778 (S.D. Miss. 2008) ("In order to recover emotional distress damages resulting from ordinary negligence, plaintiff must prove the usual elements of duty, breach, causation and damages.").  As discussed more fully below, based on the undisputed facts, Plaintiff cannot establish the first element—i.e., that Tronox owed him a duty—as a matter of law on his negligence, negligent supervision/training, negligent infliction of emotional distress, or respondeat superior claims.

**B.      Pursuant to Section 11-1-66 and Mississippi Common Law, Tronox Did Not Owe Miller a Duty to Warn Him of the Alleged Dangerous Condition.**

        In general, a premises owner "has a duty to furnish the employees of an independent contractor with a 'reasonably safe place to work or give warning of danger.'" *Ratcliff v. Georgia Pacific Corp.*, 916 So. 2d 546, 549 (Miss. Ct. App. 2005) (¶ 10) (quoting *Mississippi Chemical*

*Corp. v. Rogers*, 368 So. 2d 220, 222 (Miss. 1979)). However, § 11-1-66 relieves a premises owner of any duty where the independent contractor, or its employee, knew or reasonably should have known of the danger(s) that caused the injury. Miss. Code Ann. § 11-1-66 (Rev. 2014). Specifically, the statute provides:

> No owner, occupant, lessee or managing agent of property shall be liable for the death or injury of an independent contractor or the independent contractor's employees resulting from dangers of which the contractor knew or reasonably should have known.

*Id.*

The MWA expressly provided that Lavender worked for Tronox solely as an independent contractor and that neither Lavender nor its employees would be considered agents or employees of Tronox. Ex. 1, Tronox-Lavender MWA ¶ 28; *see Pippen v. Tronox, LLC*, 359 F.Supp.3d 440, 445 (N.D. Miss. 2019) (finding that employer of decedent who died in dredging accident at Tronox was independent contractor pursuant to Master Work Agreement between employer and Tronox). Moreover, it is undisputed that when Miller worked at the Hamilton Facility on February 14, 2022, he did so as an employee of Lavender. Ex. 3, Miller Dep. 24:14-15; Ex. 1, Tronox-Lavender MWA ¶ 28. Accordingly, pursuant to § 11-1-66, the Court should grant summary judgment in favor of Tronox if the Court finds that ***either*** Lavender ***or*** Miller knew or reasonably should have known of the alleged dangerous condition that Miller claims caused him to slip and fall.

## 1. Lavender Knew or Reasonably Should Have Known of Slip and Fall Hazards in the Slurry Storage Tank Area.

Mississippi state and federal courts have consistently held that § 11-1-66 relieves a premises owner of any duty to an employee of an independent contractor where the contractor knew, or should have known, about a dangerous situation. For example, in *Galvan v. Mississippi*

*Power Co.*, 2012 WL 1898889 (S.D. Miss. May 22, 2012), the Court considered whether Section 11-1-66 immunized Mississippi Power Company ("MPC") from claims by multiple employees of an independent contractor following the collapse of scaffolding. MPC contracted with PIC Group, Inc. ("PIC") for maintenance work on boilers. *Id.* at *1. PIC contracted with LandCoast Insulation, Inc. ("LandCoast") to perform certain work, including constructing scaffolding. *Id.* LandCoast contracted with Harsco Corporation for the supply of materials and for engineering drawings for the design and construction of the scaffolding. *Id.* During the final stages of erection of the scaffolding, the structure collapsed, injuring seven LandCoast employees. *Id.* The LandCoast employees subsequently filed two lawsuits that the Court consolidated. *Id.*

Plaintiffs asserted MPC breached its duty as the premises owner to provide the LandCoast employees, as independent contractors, with a reasonably safe workplace, by failing "to properly supervise and control the scaffolding project." *Id.* at *3.

The Court held that:

> § 11-1-66 defeats these allegations since Plaintiff merely describes conditions, the danger of which should have reasonably been known to LandCoast, the subcontractor. Indeed, the law recognizes that the contractor who represents itself as having superior knowledge and the appropriate expertise to do the work safely and is contracted to that end, should bear the sole responsibility.

*Id.* at *4. Accordingly, the Court granted MPC's motion to dismiss. *Id.* at *9. *See also Pippen v. Tronox LLC*, 359 F.Supp.3d 440, 445 (N.D. Miss. 2019) (granting summary judgment in favor of Tronox in wrongful death action involving dredging accident because decedent's employer knew or should have known of dangerous condition); *Conner v. Hardware Distribution Warehouses, Inc.*, 2007 WL 2684243, *3 (N.D. Miss. Sept. 7, 2007) (holding negligence claim

04649517

against premises owner should be dismissed under Section 11-1-66 where roofing contractor and its employees were aware of dangers inherent in climbing atop warehouse to inspect roof); *McSwain v. System Energy Resources, Inc.*, 97 So. 3d 102, 108-09 (¶¶ 15-16) (Miss. Ct. App. 2012) (holding premises owner was immune from liability under Section 11-1-66 for injuries suffered by plaintiff from fall after failure of his fall protection equipment, where plaintiff and his employer knew or should have known of the dangers).

In *Tanner v. Roseburg Forest Products South*, *Ltd. Partnership,* 185 So. 3d 1062 (Miss. Ct. App. 2016), the Mississippi Court of Appeals made it clear that § 11-1-66 is not limited to cases involving an alleged passive failure to warn by a premises owner, but is also applicable in cases where active negligence by the premises owner is alleged. In *Tanner*, the plaintiff, an employee of an independent transportation company, became injured when he slipped and fell while descending a stairwell at defendant's manufacturing plant. *Id.* at 1063 (¶ 3). Prior to the fall, plaintiff had operated a forklift, owned and maintained by defendant, which he knew "had always had small leaks prior to the accident." *Id.* (¶ 2). Plaintiff also knew that the stairwell was "wet, dirty, and oily" that evening, but acknowledged that the steps were "'always dirty'" with "'something like a grime'" on them. *Id.* (¶ 3). Plaintiff claims he fell "because of a combination of the water and dirt on the stairwell and the presence of hydraulic or other fluid that leaked on his shoes from the forklift he used." *Id.*

Defendant argued § 11-1-66 relieved it of any duty because plaintiff worked for an independent contractor and knew of the hazards concerning the forklift and stairs prior to the accident. *Id.* at 1063 (¶ 5). Plaintiff contended defendant's alleged active negligence nullified the application of § 11-1-66. *Id.* at 1064 (¶ 7). He asserted that defendant engaged in active negligence by violating internal company policies concerning performance of maintenance

checks on its forklift. *Id.* at 1065 (¶ 12). The Court rejected this argument, finding the defendant's company policy irrelevant because plaintiff worked as an independent contractor and not an employee of defendant. *Id.*

Additionally, plaintiff argued the Mississippi Supreme Court's holding in *Hoffman v. Planters Gin Co.*, 358 So. 2d 1008, 1012 (Miss. 1978) provides an exception to the immunity provided under § 11-1-66 that is applicable where defendant is actively negligent. *Tanner*, 185 So. 3d at 1065 (¶ 13). In *Hoffman*, the Court held that land owners have an obligation "to exercise reasonable care for the protection of a licensee 'as to any active operation which the occupier carries on.'" *Howze v. Garner*, 928 So. 2d 900, 903 (Miss. Ct. App. 2005) (quoting *Hoffman*, 358 So. 2d at 1012). After noting that plaintiff had offered no case law supporting his contention that "*Hoffman* should be applied in cases involving independent contractors," and that subsequent Mississippi Supreme Court decisions had significantly limited the scope of the *Hoffman* exception, the Court declined to extend the limited *Hoffman* exception to § 11-1-66. *Tanner*, 185 So. 3d at 1065-1066 (¶ 13-14).

Ultimately, the Court affirmed the trial court's grant of summary judgment to defendant under § 11-1-66 because an independent contractor employed plaintiff, and the evidence established he knew or should have known of the hazards that caused the accident and his resulting injuries. *Id.* at 1066 (¶ 15).

Section 11-1-66 is consistent with long-standing Mississippi common law concerning the duty a premises owner owes to the employees of an independent contractor. Under Mississippi common law, "[a]n employer is relieved of the duty of informing an independent contractor of a danger at the work site if the independent contractor knows of that danger." *Grammar v. Dollar*, 911 So. 2d 619, 622 (Miss. Ct. App. 2005) (¶ 7) (citing *Miss. Chemical Corp. v. Rogers*, 368 So.

04649517

2d 220, 222 (Miss. 1979)).  Furthermore, no duty exists that requires a premises owner to protect

an independent contractor from dangers and/or risks that are "intimately connected, or inherent,

to the work…" the independent contractor is contracted to perform.  *Ratcliff,* 916 So. 2d at 549-

50 (¶ 10).

Here, the undisputed facts overwhelmingly establish that Lavender knew or reasonably

should have known of potential slip and fall hazards in the slurry tank storage area.  First, as a

general matter, Lavender acknowledged in the MWA that the "facility contains risks that could

constitute a dangerous condition if [Tronox's] safety requirements, rules and regulations are not

followed."  Ex. 1, Tronox-Lavender MWA ¶ 29.  Additionally, Tronox made Lavender and its

employees aware of the risks, potentially dangerous conditions, and Tronox's requirements, rules

and regulations through safety orientation training and daily safety meetings with Lavender's on-

site safety representative.  *See* Ex. 2, Declaration of Todd Goldman ¶ 6.  The safety orientation

training and safety meetings included discussions about slip and fall hazards.  *Id.* ¶ 7.  According

to Tronox's Safety Lead, slick surfaces are a constant hazard throughout the production area due

to the manner in which titanium dioxide is produced. *Id.* ¶ 8.  Slick surfaces are an even more

prevalent hazard in the area where slurry is produced and stored.  *Id.* Tronox therefore provides

warnings to Lavender and other on-site contractors about the hazards presented by slick surfaces

in the production areas.  *Id.* Finally, Lavender's on-site representative had a duty to conduct daily

inspections of the work sites, identify potential hazards, and make the Lavender employees

aware of those hazards before beginning work.  *Id.* ¶ 9.  The Lavender safety representative

documented these daily inspections by completing a JSA, which covered a number of potential

safety hazards including "slick surfaces."  Ex. 4, Job Safety Analysis p. 1.  And one of the "Steps

of the Job" required the foreman and employees to "look at all potential hazards and work

safely." *Id.* Miller even admitted himself that as an employee of Lavender, it had a duty to warn him of potential safety hazards, including what would happen if powdery substances on the ground became "wet and damp." Ex. 3, Miller Dep. 125:8-126:1.

Based on these undisputed facts, pursuant to § 11-1-66 and Mississippi common law, Tronox did not owe Miller a duty to provide a safe work environment or to warn him of potential slip and fall hazards (although Tronox did both) because he worked for an independent contractor that knew or reasonably should have known of those hazards. Accordingly, Miller cannot satisfy the first element of his negligence, negligent supervision/training, negligent infliction of emotional distress, or respondeat superior claims.

### 2. Miller Knew or Should Have Known of Potential Slip and Fall Hazards in the Slurry Storage Tank Area.

In addition to providing immunity to premises owners based on the knowledge of their independent contractors, § 11-1-66 protects premises owners from liability if the contractor's employees themselves knew or reasonably should have known of the alleged dangerous condition. *See, e.g., Tanner,* 185 So. 3d at 1064-65 (¶¶ 8-11) (holding defendant was statutorily immune from liability on negligence claim because even if employee had no knowledge of specific leak at issue, he had used forklift for more than a year before his fall, knew that forklift had leaked several times, and knew that stairs were wet, grimy, and dirty).

The undisputed facts establish that Miller knew or reasonably should have known that the floor of the slurry storage tank area could be slippery and conducive to slipping. Miller had attended an approximate eight-hour safety orientation training session on February 7, 2022, that included a discussion about slurry. Ex. 3, Miller Dep. 97:4-20, 98:8-10, 100:8-17. When driving to the worksite, Miller observed that "the whole plant looks like a glazed donut." *Id.* 116:6-12. He had worked in the slurry storage tank area for at least "a couple of days" before his fall. *Id.*

04649517

13

23:25.  And although he denies signing the February 14 JSA, he admits that that he would have signed one on all of the other days he worked at the Hamilton Facility.  *Id.* 103:9-13.  Moreover, when Miller arrived at the site at 7:30 a.m. on February 14, dew was on the ground and it was foggy, and according to Miller, these conditions caused the white powder on the ground to become "pasty":

> 15    A.  It's powder form.  It was all in powder form
> 16    until the dew fell.
> 17    Q.  Until it the dew fell?
> 18    A.  When the fog and the dew fell on it, then it
> 19    wasn't powder anymore.  It was pasty.
> 20    Q.  How do you know it was in powder form until the
> 21    fog and dew fell?
> 22    A.  Because I had been working there for a week.

*Id.* 122:15-22.

Although the case did not involve an employee of an independent contractor (the plaintiff was a self-employed independent contractor), this Court's recent decision in *Simonson v. Dolgencorp, LLC*, 2024 WL 2959303 (N.D. Miss. June 12, 2024) is on point.  In *Simonson*, Judge Mills granted summary judgment in favor of the defendant premises owner, Dolgencorp, on all of the plaintiff's claims arising out of a slip and fall accident that occurred when the plaintiff slipped on ice in the plaintiff's parking lot.  *Id.* at *1.  The plaintiff, a self-employed truck driver making a delivery to Dolgencorp, slipped in the parking lot while walking from the guard shack back to his truck.  *Id.*  After finding that the plaintiff's relationship with Dolgencorp was that of an independent contractor, the Court ruled that Dolgencorp could not be liable pursuant to § 11-1-66, as well as Mississippi common law, because the plaintiff "was injured by a dangerous condition, the snow and ice covered parking lot, which he was aware of prior to his fall."  *Id.* at *4.

Like the plaintiff truck driver in *Simonson*, Miller claims he fell due to a condition created by the weather. In *Simonson*, it was snow and ice. Here, Miller claims dew and fog caused the white powder on the floor to become "pasty." Ex. 3, Miller Dep. 122:15-22. Moreover, like the plaintiff in *Simonson*, Miller admits that he knew the effect dew and fog could have when it came into contact with powder on the ground because "he had been working there for a week." *Id.* 122:15-22.

Like it did in *Simonson*, the Court should grant summary judgment in favor of Tronox based on Miller's actual knowledge of the alleged slippery condition. And even if Miller did not have actual knowledge of the specific condition in the spot where he slipped, he should have known of the potential for slippery conditions in the slurry storage tank area because he had been working in the area for at least "a couple of days" before his fall. *Id.* 23:25. *See Tanner*, 185 So. 3d at 1064 (¶ 11) ("Even if Tanner had no knowledge of the specific leak at issue, as he claims, that does not outweigh the fact that he had knowledge of an ongoing issue with leaks on the forklift in question. Tanner, in sum, knew of the allegedly dangerous conditions or reasonably should have known of them. Consequently, section 11–1–66 is applicable and does provide immunity.").

## V.  CONCLUSION

Tronox respectfully requests that the Court enter an order granting its Motion for Summary Judgment and dismissing Plaintiff's claims with prejudice. As demonstrated above, no genuine issue of material fact exists as to the status of Plaintiff's employer on February 14, 2022. Pursuant to the MWA, Lavender worked for Tronox as an independent contractor, and both Lavender and Plaintiff knew or should have known of the alleged dangerous condition. Accordingly, pursuant to Miss. Code Ann. § 11-1-66, Tronox did not owe Plaintiff any duty.

04649517

Dated: March 24, 2025.

Respectfully submitted,

**TRONOX LLC**

*/s/ Scott F. Singley.*
One of Its Attorneys

OF COUNSEL:

Scott F. Singley, MSB No. 100134
R. Richard Cirilli, Jr., MSB No. 99132
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902
ssingley@brunini.com
rcirilli@brunini.com

04649517

16